UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

KRAUSE BROKERAGE SERVICES, LLC,

    *Plaintiff*,

v().  Case No. 1:23-cv-1574

AMERICAN CENTURY LIFE INSURANCE
COMPANY, formerly known as AMERICAN
CENTURY LIFE INSURANCE COMPANY
OF TEXAS,

    *Defendant*.

# AMENDED COMPLAINT

Plaintiff, Krause Brokerage Services, LLC ("Plaintiff" or "Krause"), by and through its attorneys, Stafford Rosenbaum LLP, for its amended complaint against Defendant, American Century Life Insurance Company, formerly known as American Century Life Insurance Company of Texas ("Defendant" or "ACLIC"), alleges and states as follows:

## NATURE OF THE ACTION

This is an action for breach of a right of first refusal agreement between the parties.

## PARTIES

1. Plaintiff, Krause Brokerage Services, LLC is a Wisconsin limited liability company with a principal office located at 1234 Enterprise Drive, De Pere, Wisconsin.

2. Defendant, American Century Life Insurance Company, formerly known as American Century Life Insurance Company of Texas, is a Texas corporation with a principal office located at 1333 W. McDermott Drive, #200, Allen, Texas.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to Wis. Stat. § 801.04, § 801.05, and the parties' agreement as further set forth below.

4. Brown County is the proper venue pursuant to Wis. Stat. § 801.50(2) and the parties' agreement as further set forth below.

## FACTUAL ALLEGATIONS

### Krause is the Market Leader in Medicaid Compliant Annuities

5. Krause is a locally owned business that has roots going back nearly thirty (30) years.

6. From humble beginnings, Krause developed into a leading provider of Medicaid Compliant Annuities (MCA).

7. MCA is a spend-down tool used in crisis planning. It is a single premium immediate annuity that converts excess funds into an income stream with no cash value. When properly structured, an MCA accelerates Medicaid eligibility, while protecting assets.

8. Krause has invested significant resources over many years into developing MCA products and the market for MCA products.

9. Krause typically distributes MCA products through exclusive top-level distribution arrangements with select underwriters.

2

10. Exclusive top-level distribution arrangements are used in the insurance industry to allow insurance carriers to control the sale of their product through trusted distributors who provide valuable support to both sub-distributors and the carrier itself.

11. An exclusive top-level distribution arrangement is an arrangement whereby the insurance carrier contracts with a distributor to distribute the carrier's product at the highest commission level offered by the carrier, with the carrier not offering the same top-level commission to any other distributor.

12. Exclusive top-level distribution arrangements are typical in the MCA product market because there are few distributors like Krause that are capable of reviewing, processing, and selling these highly specialized products.

13. Exclusive top-level distribution arrangements give the top-level distributor of the MCA product discretion to select their sub-distributors and control the sales process, including review and final signoff requirements for the sale.

14. Exclusive top-level distribution arrangements permit other distributors and sub-distributors to sell MCA products and do not result in territorial exclusivity for any distributor or sub-distributor.

15. The number of underwriters for MCA products is relatively small within this specialized niche market.

16. Krause is sought out by underwriters looking to get into the MCA market because of Krause's distinguished reputation in the industry.

17. Krause regularly assists underwriters seeking to enter the MCA market.

18. When Krause assists underwriters seeking to enter the MCA market, it customarily enters into a right of first refusal agreement with the underwriter that provides Krause with the opportunity to become the exclusive top-level distributor for that underwriter within the MCA market.

**ACLIC Approaches Krause about Partnering on an MCA**

19. ACLIC is a specialty insurer located in Allen, Texas. According to its website, ACLIC is licensed to do business in 35 states.

20. ACLIC holds itself out as specializing in single premium deferred and immediate fixed annuities.

21. According to Demotech, a financial analysis firm servicing the insurance industry, ACLIC had net admitted assets of $114,986,042 and net premiums written of $34,617,178 in 2022.

22. In or around January 2021, ACLIC approached Krause about collaborating on the development and distribution of a Special Purpose Single Premium Immediate Annuity product within the MCA market.

23. ACLIC approached Krause because of Krause's reputation and expertise in the MCA market, which knowledge ACLIC lacked.

**ACLIC and Krause Enter Into a Right of First Refusal**

24. ACLIC and Krause engaged in extensive negotiations regarding the MCA market and ACLIC's desire to develop a product for that market.

25. In light of these negotiations, ACLIC and Krause entered into a Non-Disclosure Agreement, dated April 14, 2021 (the "NDA"). A copy of the NDA is attached hereto as **Exhibit A**.

26. The NDA includes typical provisions protecting the exchange of proprietary and other sensitive information the parties wished to remain confidential while evaluating a potential business relationship.

27. Krause invested resources into developing ACLIC's Single Premium Immediate Annuity. Among other things, Krause provided ACLIC with the following: (a) proprietary information regarding the MCA market and potential business opportunities, including target markets; (b) product review and development; and (c) commission competitive review.

28. As part of the consideration for Krause sharing proprietary information and helping ACLIC develop its Special Purpose Single Premium Immediate Annuity within the MCA market, the NDA also includes a right of first refusal provision, which provides as follows:

> 17. **Exclusivity.** Each Party agrees and understands that the other Party may be evaluating similar proposals and/or transactions with other parties, including but not limited to potentially competing companies, and may currently be considering or may consider in the future internal developments similar to those being discussed by the Parties. In consideration of the significant industry experience and market information held and maintained by Krause which will serve the Purpose of this Agreement and evaluation of a Potential Transaction, American Century agrees to offer Krause the right of first refusal to be the sole and exclusive top-level distributor of American Century's Special Purpose Single Premium Immediate Annuity within the Medicaid Compliant Annuity Market. If/when American Century offers Krause the right of first refusal to be the sole and exclusive top-level distributor of the Special Purpose Single Premium Immediate Annuity within

5

the Medicaid Compliant Annuity Market, Krause shall have thirty (30) calendar days from the date the right of first refusal is extended to accept or refuse the offer. If no response is received within thirty (30) calendar days from the date the right of first refusal is extended, the offer shall be deemed refused. If the right of first refusal is exercised and Krause elects to accept the offer by American Century to be its sole and exclusive top-level distributor of its Special Purpose Single Premium Immediate Annuity within the Medicaid Compliant Annuity Market, the Parties shall have sixty (60) days to negotiate an exclusive producer agreement, which sixty (60) days may be amended by the Parties. In the event sixty (60) days elapse following Krause's exercise of its right of first refusal and the Parties do not expressly extend the deadline for finalizing the exclusive producer agreement, this shall not constitute waiver or refusal of the right of first refusal and the deadline shall automatically extend for a periods of thirty (30) days until the Parties either complete the exclusive producer agreement or both Parties mutually agree, in writing, that no agreement will be reached.

29. The purpose of the right of first refusal provision was to provide Krause with the opportunity to become the exclusive top-level distributor of ACLIC's Special Purpose Single Premium Immediate Annuity within the MCA market.

30. The Effective Date of the NDA is April 14, 2021.

31. The terms of the NDA are effective until April 14, 2024.

32. The NDA also includes a remedies provision, which provides as follows:

19. **Remedies.** The Parties hereby acknowledge and agree that breach of this Agreement might cause the Disclosing Party to suffer irreparable harm for which money damages would not be a sufficient remedy. Accordingly, each Party will also be entitled to equitable relief, including injunction and specific performance, from any court of competent jurisdiction as a remedy for any breach or threatened breach of this Agreement by the other Party or any of the other Party's Representatives, without proof of actual damages, and the Parties waive any requirement for securing or posting of any bond in connection with any such remedy. The Parties will not oppose the granting of any such remedy on the basis that a Party has an adequate remedy at law. Such remedies shall not be deemed to be the exclusive remedies for any breach of this Agreement but shall be in addition to all other rights and remedies available at law or in equity. In the event of litigation relating to this Agreement, if a court of competent jurisdiction determines that either

Party or any of its Representatives has breached this Agreement, such party will be liable for, and will pay to the other Party and the other Party's Representatives, the reasonable legal fees incurred by the other Party and the other Party's Representatives in connection with such litigation (including any appeal relating thereto).

33. The NDA provides that "[t]his Agreement shall be governed, construed, and enforced in accordance with the laws of the state of Wisconsin, without regard to principles of conflicts of law."

34. The NDA also includes a jurisdiction provision, which provides as follows:

21.6 **Jurisdiction.** Any legal suit, action or proceeding arising out of or related to this Agreement the matters contemplated hereunder may be instituted exclusively in the federal courts of the United States or the courts of the State of Wisconsin, in each case located in the city of Green Bay and County of Brown, and each Party irrevocably submits to the jurisdiction of such courts in any such suit, action, or proceeding and waived any objection based on improper venue or *forum non conveniens*. Service of process, summons, notice, or other document by mail to such Party's address set forth herein shall be effective service of process for any suit, action, or other proceeding brough in any such court.

35. Pursuant to the NDA, Krause invested additional resources into developing ACLIC's Special Purpose Single Premium Immediate Annuity, including reviewing ACLIC's product application, transfer documents, and sample forms. Krause also engaged in extensive market research for ACLIC's Special Purpose Single Premium Immediate Annuity, which it shared with ACLIC. These benefits were provided through Krause personnel who devoted considerable time and effort.

36. Through Krause's assistance, ACLIC was able to develop its Special Purpose Single Premium Immediate Annuity product.

37. However, despite Krause's significant investment and effort directed at developing ACLIC's Special Purpose Single Premium Immediate Annuity product, ACLIC did not engage Krause to be its exclusive top-level distributor.

**ACLIC Partners with an Insurance Producer other than Krause to Sell its MCA Product on an Exclusive Top-Level Basis.**

38. Upon information and belief, ACLIC lacked a good-faith intention to partner with Krause and instead planned to acquire Krause's assistance and knowledge of the MCA market for use with an insurance producer other than Krause.

39. Upon information and belief, after Krause's significant investment and effort directed and developing ACLIC's Special Purpose Single Premium Annuity product, ACLIC entered into an exclusive top-level arrangement with an insurance producer other than Krause.

40. Upon information and belief, an insurance producer other than Krause is distributing ACLIC's Special Purpose Single Premium Immediate Annuity product in the MCA market on an exclusive top-level basis.

**COUNT 1**
**BREACH OF CONTRACT**

41. Krause re-alleges and incorporates the foregoing paragraphs as if fully set forth herein.

42. Krause and ACLIC entered into the NDA, which contains a right of first refusal provision granting Krause the right to become ACLIC's exclusive top-level distributor of ACLIC's Special Purpose Single Premium Immediate Annuity within the MCA market.

43. The right of first refusal provision contained in the NDA is in full force and effect.

44. Krause has complied with all terms and conditions of the NDA.

45. ACLIC has breached the right of first refusal provision contained in the NDA by entering into an exclusive top-level distribution relationship with an insurance producer other than Krause for ACLIC's Special Purpose Single Premium Immediate Annuity within the MCA market.

46. As a result of ACLIC's breach of the parties' agreement, Krause has been damaged in an amount to be determined at trial.

47. Krause is also entitled to specific enforcement of the right of first refusal provision contained in the NDA, including without limitation, the right to be the sole and exclusive top-level distributor of ACLIC's Special Purpose Single Premium Immediate Annuity within the MCA market.

## COUNT 2
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

48. Krause re-alleges and incorporates the foregoing paragraphs as if fully set forth herein.

49. ACLIC's conduct, as described above, has had, and continues to have, the effect of injuring and/or destroying Krause's ability to receive the benefits of its agreement with ACLIC and violates the spirit of that agreement.

50. ACLIC's conduct is in breach of the covenant of good faith and fair dealing implied by the parties' agreement.

51. ACLIC's breach has caused Krause to suffer damages in an amount to be proven at trial.

## COUNT 3
## QUANTUM MERUIT

52. Krause re-alleges and incorporates the forgoing paragraphs as if fully set forth herein.

53. Krause and ACLIC, by their conduct, formed a relationship that was contractual in nature.

54. Krause, acting in good faith, provided ACLIC the services set forth in Paragraphs 27 and 35, above.

55. ACLIC freely accepted the services of Krause. In doing so, ACLIC was aware that Krause expected to be compensated for its services.

56. Krause had a reasonable expectation of being compensated for its services.

## COUNT 4
## UNJUST ENRICHMENT

57. Krause re-alleges and incorporates the forgoing paragraphs as if fully set forth herein.

58. Krause provided a benefit to ACLIC by providing it the services set forth in Paragraphs 27 and 35, above.

59. ACLIC knowingly received and retained the benefit provided by Krause.

60. ACLIC has refused and/or failed to compensate Krause for the benefit provided by Krause.

61. It would be inequitable to permit ACLIC to retain the benefit provided by Krause without compensating Krause for such benefit.

WHEREFORE, for the foregoing reasons, Plaintiff Krause Brokerage Services, LLC demands judgment against Defendant American Century Life Insurance Company as follows:

A. Compensatory damages in an amount to be determined at trial;

B. Specific performance that ACLIC abide by the terms of the parties' agreement and offer Krause the right of first refusal to be the exclusive top-level distributor of American Century's Special Purpose Single Premium Immediate Annuity within the Medicaid compliant annuity market;

C. Reasonable attorney fees as provided for in the NDA;

D. All costs and attorneys' fees permitted by law; and

E. Any other relief this Court deems just and equitable.

Dated: January 30, 2024.

STAFFORD ROSENBAUM LLP

By *Electronically signed by Matthew V. Fisher*
Matthew V. Fisher (SBN 1088968)
Carly Gerads (SBN 1106808)
*Attorneys for Plaintiff Krause Brokerage Services, LLC*

1200 North Mayfair Road
Suite 430
Milwaukee, WI 53226-3282
mfisher@staffordlaw.com
cgerads@staffordlaw.com
414.982.2850