**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**KRAUSE BROKERAGE SERVICES, LLC,**

**Plaintiff,**

**v.** **Case No. 23-CV-1574**

**AMERICAN CENTURY LIFE INSURANCE COMPANY,**

**Defendant.**

---

## DECISION AND ORDER

---

### 1. Background

A Medicaid Compliant Annuity is a complicated insurance product that provides an annuitant with income while preserving Medicaid eligibility. (ECF Nos. 36, ¶ 8; 43, ¶¶ 3-14.) In 2021, American Century Life Insurance Company began to explore selling this type of annuity. (ECF No. 36, ¶ 11.) American Century's president, Raz Silberman, contacted the founder of Krause Brokerage Services, LLC, to see if Krause would be interested becoming an agent to sell American Century's Medicaid Compliant Annuity. (ECF No. 36, ¶ ¶ 9, 16.)

As part of their discussions, Krause and American Century entered into a non-disclosure agreement. (ECF No. 36, ¶ 19.) In addition to restricting certain disclosures, the non-disclosure agreement included an exclusivity provision. (ECF No. 36, ¶ 20.)

The exclusivity provision required American Century "to offer Krause the right of first refusal to be the sole and exclusive top-level distributor of American Century's Special Purpose Single Premium Immediate Annuity within the Medicaid Compliant Annuity Market." (ECF No. 36, ¶ 20.) The parties then had 60 days to negotiate the terms of an exclusive producer contract. (ECF No. 36, ¶ 20.) But if the parties did not agree, the time would continue (apparently until the agreement expired on April 14, 2024, albeit in 30-day intervals) unless both sides either reached a contract or agreed in writing that no contract would be reached. (ECF No. 36, ¶¶ 20, 24-25.) Silberman testified that he agreed to this unorthodox provision because he had no intention of ever offering a producer exclusivity. (ECF No. 43, ¶ 34.)

American Century offered to have Krause sell its Medicaid Compliant Annuity, but rather than agreeing to American Century's standard agent contract, Krause insisted that it become American Century's exclusive distributor. (ECF No. 36, ¶¶ 36-38.) Silberman refused, stating that it was American Century's policy to not enter into exclusive distribution contracts (ECF No. 36, ¶ 39), and Krause never became an agent for American Century (ECF No. 36, ¶ 36).

American Century turned to other distributors including AshBer, LLC. (ECF No. 36, ¶ 27.) AshBer likewise sought to be American Century's exclusive distributor. (ECF No. 36, ¶ 44.) Silberman again refused. (ECF No. 36, ¶ 45.) Nonetheless, AshBer agreed to become a distributor of American Century's Medicaid Compliant Annuity (ECF No. 36, ¶ 50) and eventually became, in Krause's view, American

Century's de facto exclusive distributor (*see* ECF No. 35 at 2). Specifically, Krause notes that on May 29, 2023, American Century responded to an agent's inquiry about American Century's Medicaid Compliant Annuity by saying, "We work with AshBer as our IMO[1] for this product." (ECF No. 43, ¶ 77.)

Krause filed suit alleging that American Century violated the exclusivity provision in the non-disclosure agreement. (ECF No. 12, ¶¶ 42-47.) Its amended complaint also includes claims for the breach of the covenant of good faith and fair dealing (ECF No. 12, ¶¶ 49-51), quantum meruit (ECF No. 12, ¶¶ 53-56), and unjust enrichment (ECF No. 12, ¶¶ 58-61). American Century removed the action to federal court (ECF No. 1), and this court has jurisdiction under 28 U.S.C. § 1332 (*see* ECF Nos. 1, ¶¶ 12, 15, 21, 22; 4, ¶ 5; 48). American Century has moved for summary judgment (ECF No. 27), and that motion is ready for resolution.

**2. Summary Judgment Standard**

"A motion for summary judgment is a contention that the material facts are undisputed and the movant is entitled to judgment as a matter of law." *Hotel 71 Mezz Lender Ltd. Liab. Co. v. Nat'l Ret. Fund.*, 778 F.3d 593, 601 (7th Cir. 2015). The court does not "weigh the evidence and determine the truth of the matter" but rather "determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)

[1] IMO stands to Independent Marketing Organization (ECF No. 43, ¶ 15), which, according to Krause's corporate counsel Scott Engstrom (ECF No. 43, ¶ 28), is an industry term "understood to mean a producer has a top-level contract with an insurance carrier" (ECF No. 43, ¶ 21).

The movant has the burden to show that summary judgment is appropriate. *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021). The court will "read the facts and draw all reasonable inferences in the light most favorable to the non-moving party." *Flowers v. Kia Motors Fin.*, 105 F.4th 939, 945 (7th Cir. 2024). Nonetheless, the non-movant must go beyond mere allegations and conclusions and instead support its contentions with proper documentary evidence. *Foster v. PNC Bank*, 52 F.4th 315, 320 (7th Cir. 2022); *Weaver*, 3 F.4th at 934. Speculation is insufficient to create a genuine dispute of material fact. *Id.* If the movant sustains its burden and shows both that there are no disputed material facts and that it is entitled to judgment as a matter of law "[t]he court shall grant summary judgment …." Fed. R. Civ. P. 56(a).

**3. Analysis**

Krause's claims share a common premise—that American Century offered and AshBer accepted to become American Century's "sole and exclusive top-level distributor of American Century's Special Purpose Single Premium Immediate Annuity within the Medicaid Compliant Annuity Market." But as even Krause concedes, AshBer and American Century never entered into any contract making AshBer its exclusive top-level distributor. (ECF No. 35 at 12; *see also* ECF No. 36, ¶¶ 48-49.) Instead, Krause asserts that "American Century and AshBer's course of dealing overwhelmingly suggests that the two operate under a de facto exclusive relationship." (ECF No. 35 at 1.)

### 3.1. Breach of Contract

Under Wisconsin law, to prevail on a breach of contract claim, a plaintiff must prove "(1) the existence of a contract; (2) a breach of the contract; and (3) damages from the breach." *Gallo v. Mayo Clinic Health Sys.-Franciscan Med. Ctr.*, 907 F.3d 961, 965 (7th Cir. 2018). A right of first refusal is a contractual provision more commonly associated with real estate transactions. *See Country Visions Coop. v. Archer-Daniels-Midland Co.*, 2021 WI 35, ¶2, 396 Wis. 2d 470, 958 N.W.2d 511; *MS Real Estate Holdings, LLC v. Donald P. Fox Family Tr.*, 2015 WI 49, ¶24, 362 Wis. 2d 258, 864 N.W.2d 83. But parties are largely free to dictate the terms of their contract, *Country Visions Coop.*, 2021 WI 35, ¶23 n.10, and the court will interpret any right of first refusal as it does any other contract language, *see MS Real Estate Holdings*, 2015 WI 49, ¶23. When a contract is clear, the court construes it according to its literal terms. *Md. Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶23, 326 Wis. 2d 300, 786 N.W.2d 15 (quoting *Gorton v. Hostak, Henzl & Bichler, S.C.*, 217 Wis. 2d 493, 506, 577 N.W.2d 617 (1998)).

Krause contends that, by having AshBer as its de facto exclusive top-level distributor, American Century violated Krause's right of first refusal.

As Krause notes, de facto exclusivity may be significant in some contexts. (ECF No. 35 at 11-12 (citing *FTC v. Lifewatch Inc.*, 176 F. Supp. 3d 757, 773 (N.D. Ill 2016) (discussing how telemarketer's de facto exclusive relationship with defendant may have rendered the telemarketer the defendant's agent); *Keller v. Miri Microsystems LLC*, 781 F. 3d 799, 808 (6th Cir. 2015) (noting that a de facto exclusive relationship

is relevant to whether plaintiff was the defendant's employee or an independent contractor under the Fair Labor Standards Act); *Maxon Hyundai Mazda v. Carfax, Inc.*, No. 13-CV-2680 (AJN), 2014 U.S. Dist. LEXIS 139480, at *254-55 (S.D.N.Y. Sep. 29, 2014) (stating in the context of an antitrust claim, "Simply put, it means courts privilege reality over formality when evaluating the existence of an exclusive dealing arrangement.")).)

But when it comes to Krause's right of first refusal, there is a significant and material distinction between de facto exclusivity and a contract to be the actual "sole and exclusive top-level distributor of American Century's Special Purpose Single Premium Immediate Annuity within the Medicaid Compliant Annuity Market." (ECF No. 36, ¶ 20.) "Sole and exclusive" are unambiguous, concrete, and absolute terms. *Cf. Key v. William Ryan Homes, Inc.*, 2016 WI App 34, 369 Wis. 2d 72, 879 N.W.2d 809 (unpublished) ("The language 'sole and exclusive remedy' could not be more clear."). They are not terms "in the vein of horseshoes and hand grenades; close is not good enough." *Cf. N. Shore Bank FSB v. Progressive Cas. Ins. Co.*, No. 10-C-71, 2011 U.S. Dist. LEXIS 41402, at *20 (E.D. Wis. Apr. 15, 2011).

American Century's relationship with AshBer was neither sole nor exclusive. (*See* ECF No. 36, ¶¶ 48-49.) That American Century's relationship with AshBer evolved to become one of de facto exclusivity reflects merely the parties' ongoing choices to continue their relationship and the lack of performance by the others with whom American Century contracted as agents. Actual exclusivity, however, would have eliminated any choice. That distinction is crucial. It is the difference between

dating and marriage. And while American Century apparently found a stable relationship with AshBer, it made clear that it was not willing to make a formal commitment to settle down with just one distributor. Indeed, after American Century entered an agent contract with AshBer, American Century continued to negotiate a possible agent contract with Krause. (*See* ECF No. 36, ¶ 50.)

As Silberman explained, American Century was concerned about tying itself to a single distributor because if that distributor failed to meet expectations, American Century would have no means to sell its product. (ECF No. 36, ¶¶ 41, 57.) In other words, an exclusivity agreement puts the risk of underperformance on American Century, whereas American Century's standard agent contract puts the risk of underperformance on the agent. (*See* ECF No. 36, ¶ 72.)

American Century offered both Krause and AshBer its standard agent contract. (*See* ECF No. 36, ¶¶ 36-39, 56.) Krause refused, instead demanding that American Century bear the risk of exclusivity. (*See* ECF No. 36, ¶¶ 41, 43, 61.) AshBer, to its apparent eventual benefit, agreed to take on the risk of non-exclusivity and proved its value to American Century such that their relationship evolved to be one of de facto exclusivity. What is crucial and dispositive is that American Century always retained the ability to, and in fact did, contract with other distributors. (ECF No. 36, ¶¶ 59, 66-69, 77-79, 88, 91.) Even if Krause proved that American Century's relationship with AshBer was de facto exclusive, Krause's breach of contract claim fails because such a relationship did not implicate Krause's right of first refusal. That Krause employees may have intended or understood the provision to apply to de facto

exclusivity (*see* ECF No. 43, ¶ 36) does not expand the provision beyond its explicit terms. The agreement granted Krause a right of first refusal only with respect to *actual* exclusivity. The court will grant American Century's motion for summary judgment as to Krause' breach of contract claim because it is undisputed that American Century never offered AshBer or any other distributor actual exclusivity.

### 3.2. Duty of Good Faith and Fair Dealing

Every contract includes an implied duty of good faith and fair dealing. *Beidel v. Sideline Software, Inc.*, 2013 WI 56, ¶10, 348 Wis. 2d 360, 842 N.W.2d 240. This obligation encompasses a duty that parties cooperate and use their best efforts to fulfill their contractual obligations. *Metro. Ventures, Ltd. Liab. Co. v. GEA Assocs.*, 2006 WI 71, ¶35, 291 Wis. 2d 393, 717 N.W.2d 58. A party that complies with the letter of a contract may nonetheless violate the implied duty of good faith and fair dealing if it fails to comply with the spirit of that contract. *Beidel*, 2013 WI 56, ¶27 (discussing *In re Estate of Chayka*, 47 Wis. 2d 102, 107, 176 N.W.2d 561, 564 (1970)). "In other words, the duty of good faith accompanies not just what the contract says but also what the parties expected to occur." *Betco Corp. v. Peacock*, 876 F.3d 306, 310 (7th Cir. 2017).

Beyond "evasion of the spirit of the bargain," a party to a contract may violate the duty of good faith and fair dealing by a "lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Am. Dairy Queen v. Wineinger*, No. 21-cv-378-wmc, 2022 U.S. Dist. LEXIS 135908, at *15-16

(W.D. Wis. Aug. 1, 2022) (quoting *Foseid v. State Bank*, 197 Wis. 2d 772, 797, 541 N.W.2d 203, 213 (Ct. App. 1995)). A violation is also embodied in a party "injuring or destroying the other party's ability to receive the benefits of the contract." *Betco*, 876 F.3d at 310.

However, actions that are authorized under the contract cannot violate the implied duty of good faith and fair dealing. *August Res. Funding, Inc. v. Procorp, LLC*, 482 F. Supp. 3d 808, 814 (W.D. Wis. 2020) (citing *Super Valu Stores, Inc. v. D-Mart Food Stores, Inc.*, 146 Wis. 2d 568, 577, 431 N.W.2d 721, 726 (Ct. App. 1988)); *India Breweries Inc. v. Miller Brewing Co.*, No. 05-C-0467, 2007 U.S. Dist. LEXIS 76075, at *33 (E.D. Wis. Oct. 11, 2007). "A party cannot rely on the implied duty of good faith and fair dealing 'to undo express terms of an agreement.'" *August Res. Funding*, 482 F. Supp. 3d at 814 (quoting *Beidel*, 2013 WI 56, ¶ 29). The duty of good faith and fair dealing does not turn every perceived unfairness under a contract into an actionable tort. *See August Res. Funding*, 482 F. Supp. 3d at 814.

In seeking summary judgment as to Krause's good faith and fair dealing claim American Century notes its uncertainty of the nature of Krause's claim. (ECF No. 32 at 20-21.) Speculating that Krause's claim rests on American Century's failure to make Krause its exclusive distributor, it asserts that this could not violate the duty of good faith and fair dealing because the agreement never required American Century to do so.

Krause contends that its claim for breach of the duty of good faith and fair dealing claim arises from "American Century's failure to honor—and efforts to

dodge—its obligations under the NDA's right of first refusal." (ECF No. 35 at 29.) It asserts that American Century never intended to partner with Krause but instead exploited the relationship to gain market intelligence. (ECF No. 35 at 29.) As support, Krause reprises its argument that AshBer became Krause's de facto exclusive distributor. (ECF No. 35 at 29-30.)

Framed this way, the claim is simply a repackaging of the breach of contract theory. Because it rests on the same contractual premise, it fails for the same reasons the breach of contract claim fails.

The claim does not survive even if the court were to construe it more liberally. At most, Krause may have unilaterally hoped or expected that the agreement conferred a right of first refusal to serve as American Century's de facto exclusive distributor. That expectation, however, cannot support a breach of duty of good faith claim where the expectation conflicts with the plain language of the agreement. Silberman, concerned about being bound to an underperforming exclusive distributor, understood the agreement as written—to afford Krause a right of first refusal only if American Century ever chose to have a "sole and exclusive top-level distributor." The duty of good faith and fair dealing cannot be used to expand a contract beyond its explicit terms.

Krause has not produced evidence that American Century's de facto exclusive relationship with AshBer was simply a subterfuge to evade Krause's right of first refusal. *Cf. N. Crossarm Co. v. Chem. Specialities, Inc.*, 318 F. Supp. 2d 752, 763 (W.D. Wis. 2004) ("Subterfuges and evasions violate the obligation of good faith in

performance even though the actor believes his conduct to be justified." (quoting Restatement (Second) of Contracts § 205 cmt. d.)). Rather than suggesting an attempt to evade the letter of its agreement with Krause, the fact that AshBer's exclusivity was merely de facto reflects the distinction that Silberman sought to maintain and which he explained to Krause—American Century did not want to be contractually bound to a single distributor in case that distributor underperformed. (ECF No. 36, ¶ 57.)

Krause has not presented evidence to support its assertion that American Century entered into the agreement intending only to exploit Krause's knowledge and without any intent to partner with it. To the contrary, it is undisputed that American Century offered Krause the same contract it made with AshBer. (*See, e.g.*, ECF No. 36, ¶ 76.) Insofar as Krause is suggesting that American Century enticed Krause with false suggestions of a future exclusive contract, again, this is belied by the evidence. American Century, through Silberman, was candid that it had no intention of ever agreeing to an exclusive contract with anyone, going so far as to characterize its opposition to such contracts as a matter of American Century policy. (ECF No. 36, ¶ 39.)

Regardless of how the claim is characterized or articulated, the undisputed facts demonstrate that at no point did American Century violate the duty of good faith or fair dealing. Accordingly, the court will grant American Century's motion for summary judgment as to this claim.

### 3.3. Quantum Meruit and Unjust Enrichment

In support of its quantum meruit and unjust enrichment claims, Krause alleges that it provided American Century with services that benefited American Century and for which American Century knew Krause expected to be compensated. (ECF No. 12, ¶ ¶ 27, 35, 53-56, 58-61.)

"In Wisconsin the quasi-contractual theories of quantum meruit and unjust enrichment are legal causes of action grounded in equitable principles and can be invoked only in the absence of an enforceable contract." *Carroll v. Stryker Corp.*, 658 F.3d 675, 682 (7th Cir. 2011). "Where there is an enforceable contract, the proper claim is for breach of contract; quantum meruit and unjust enrichment are unavailable." *Id.*

In response to American Century's motion for summary judgment Krause states that its "quantum meruit and unjust enrichment claims are pled in the alternative so that in the event the right of first refusal underlying Krause's breach of contract claim was, for some reason, deemed unenforceable or invalid, Krause could still pursue a recovery under an equitable, quasi-contract theory." (ECF No. 35 at 30.)

This backstop is of no help to Krause because the parties' right of first refusal agreement was a valid contract. The parties' agreement is explicit that Krause provided its services to American Century in exchange for American Century agreeing "to offer Krause the right of first refusal to be the sole and exclusive top-level distributor of American Century's Special Purpose Single Premium Immediate Annuity within the Medicaid Compliant Annuity Market." (ECF No. 36, ¶ 20.)

Because valid a contract controls the parties' relationship, Krause's quantum meruit and unjust enrichment claims fail.

**4. Conclusion**

Accepting as true that AshBer became American Century's de facto sole and exclusive top-level distributor of its Medicaid compliant annuity, that relationship did not violate American Century's agreement "to offer Krause the right of first refusal to be the sole and exclusive top-level distributor …." There is a significant and material distinction between de facto and actual exclusivity as it relates to American Century's relationship with its distributors. American Century's relationship with AshBer was neither sole nor exclusive. American Century always retained the ability to work with other distributors if AshBer failed to meet its expectations. In fact, American Century continued to negotiate with Krause for it to become an American Century agent even after it contracted with AshBer. (ECF No. 36, ¶ 50.) Because Krause's right of first refusal applied only to actual exclusivity, American Century is entitled to summary judgment on Krause's breach of contract claim. Krause's good faith and fair dealing claim fails because American Century's conduct was authorized under the parties' agreement, and American Century did not engage in any other conduct that could constitute a violation of its duties. Finally, because a valid contract existed between the parties, Krause's quantum meruit and unjust enrichment claims fail. Accordingly,

**IT IS THEREFORE ORDERED** that American Century Life Insurance Company's motion for summary judgment (ECF No. 27) is **GRANTED**. This action is **DISMISSED**. The Clerk shall enter judgment accordingly.

Dated at Green Bay, Wisconsin this 22nd day of April, 2025.

*s/ Byron B. Conway*
BYRON B. CONWAY
United States District Judge